**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AURORA PRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:23-cv-00259 |
| CITY OF AURORA; KEITH CROSS, in | ) | |
| his official capacity as Chief of the | ) | Hon. Martha M. Pacold |
| Aurora Police Department; and MIKE | ) | |
| NELSON, in his official capacity as | ) | |
| Aurora Community Events Coordinator, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

i

## I.  INTRODUCTION

Plaintiff Aurora Pride moves for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d)(2)(B). The award would fairly compensate Aurora Pride's counsel for their efforts in securing the preliminary injunction that enjoined provisions of the City's 2023 Special Events Ordinance (the "2023 Ordinance") and allowed the 2023 Aurora Pride Parade to proceed safely and successfully. Aurora Pride seeks fees for the efforts of its attorneys with the American Civil Liberties Union of Illinois and Sidley Austin LLP, but Sidley has agreed that any fees awarded for its work will be donated to the ACLU.

Aurora Pride is a prevailing party by any measure. It secured a preliminary injunction after expedited discovery demanded by the City, an evidentiary hearing (also demanded by the City) with multiple witnesses, and two rounds of briefing on novel legal issues in the complex field of First Amendment law. All of this was accomplished in a tight time frame between the enactment of the Ordinance in January 2023 and the Aurora Pride Parade in June of that year. Aurora Pride is entitled to fees now because the preliminary injunction was mooted by the City's amendment of the challenged provisions of the 2023 Ordinance following multiple settlement conferences. *See* Dkt. 88–1 (the "2024 Ordinance"). Despite efforts to negotiate a settlement governing attorneys' fees, the City has held firm to the position that Aurora Pride is not entitled to *any* fees.

## II.  BACKGROUND

### A.  Plaintiff sued after requesting that the City change the Ordinance voluntarily.

The Aurora Pride Parade has been a successful community event since 2018. Members of the Aurora Police Department have participated in many of those parades. In 2022, Aurora Pride

decided that, in light of community feedback and the unique history of Pride, police officers

participating in the parade (as opposed to providing security for it) should do so in civilian

clothing and without official vehicles. Dkt. 65 at 3. Controversy ensued. Many police officers,

offended by Aurora Pride's political decision, declined to work the parade. Because the

Ordinance made recruitment and "retention" of police officers the responsibility of the event

organizer – not the City – the City deemed Aurora Pride in violation of the Ordinance and

canceled the parade permit. *Id.* at 4. The permit was reinstated after Aurora Pride threatened suit,

and the City offered a triple-time pay incentive to officers to volunteer. That cost was then

invoiced to Aurora Pride. *Id.* After the parade, Aurora Pride told the City that the Special Events

Ordinance in effect at the time (the "2022 Ordinance") was unconstitutional, and asked the City

to revise it to avoid a repeat of the events that almost shut down the 2022 Pride Parade. Dkt. 16

at 1. Those pre-litigation discussions began in August 2022, but the City declined to remove the

unconstitutional provisions, and instead presented revisions to the 2022 Ordinance that doubled

down on the requirement that parade organizers—not the City—convince police officers to

"volunteer" for parade duty, and allowing the cancellation of the permit if they failed to do so.

**B. This lawsuit and the 2023 Ordinance.**

Approximately a week after Aurora Pride filed suit in January 2023, the City enacted the

2023 Ordinance. Dkt. 28 ¶ 93. The 2022 Ordinance had allowed the City to cancel a special

event if its police officers chose not to volunteer to provide security for it, including when they

disagreed with the Parade's message. The 2023 Ordinance retained that unconstitutional

requirement and refined the negative consequences organizers could face if it failed to meet it.

Dkt. 28–2, 2023 Ordinance Sec. 41.5-114(a) (reflecting additions that disclaim any guarantee of

2

city personnel participating); Sec. 41.5-114(c)(4)–(7) (new provisions detailing process for reduction in size or scope of event in the case of failure to secure sufficient numbers of police officers); Sec. 41.5-180(b) (reflecting addition of reducing events to "Tier 6" as alternative to revocation). In addition to cancelling the event, the City could reduce a special event's size and scope when applicants did not "retain" a sufficient number of officers. Dkt. 65 at 31 & 34. This could mean a shorter parade route or conversion of a parade into a stationary event depending on how many police officers choose to volunteer—which, as Aurora Pride's experience in 2022 showed, meant that events could be curtailed or cancelled if they carried messages that too many police officers found disagreeable. *Id.* In response to the amended ordinance, Aurora Pride filed an Amended Complaint and an Amended Preliminary Injunction Motion. Dkt. 28; Dkt. 31.

### C. Defendants insisted on expedited discovery and an evidentiary hearing.

With just over four months remaining before the 2023 Pride Parade, the parties disagreed about what was needed to resolve the preliminary injunction motion. Aurora Pride contended that neither discovery nor an evidentiary hearing was necessary, and that the motion presented a constitutional legal issue that could be resolved on the papers and the undisputed facts. *See* Dkt. 17 ¶¶ 3–6; Dkt. 20 (Plaintiff's brief in opposition to expedited discovery); Dkt. 26 at 3–4 (noting parties' dispute over scope of expedited discovery and evidentiary hearing); Dkt. 43 (Plaintiff's motion to clarify scope of remaining discovery). Defendants, on the other hand, insisted that they needed broad expedited discovery and an evidentiary hearing. *See* Dkt. 16 at 3 (Defendants' status report arguing "the City is entitled to both document production and depositions" and that it "does not believe this matter can be decided just 'on the papers.'"); Dkt. 19 at 4–7 (arguing that discovery into the circumstances of the 2022 Aurora Pride Parade was necessary to

understand how the ordinance would be applied in 2023); Dkt. 46 (arguing for need to depose non-declarants and for an evidentiary hearing).

Exercising its discretion, the Court permitted the City's requested discovery. The parties exchanged written discovery and proceeded with five depositions. *See* Dkt. 61–35 (Koverman deposition); Dkt. 61–36 (Ciesla deposition); Dkt. 61–37 (Nelson deposition); Dkt. 61–38 (Hillgoth deposition); Dkt. 61–39 (Cross deposition). Plaintiff also prepared, negotiated, and revised stipulated facts with Defendants in an attempt to narrow the scope of discovery as much as possible. Dkt. 38.

The Court also granted Defendants' request for an evidentiary hearing. This entailed additional work preparing and exchanging exhibits and witness lists with Defendants and engaging in the intensive preparation required for a live evidentiary presentation. *See* Dkt. 27. The hearing itself involved opening statements, direct examinations, cross examinations, and closing arguments, and took almost a full day. It was followed by post-hearing briefing. Dkt. 55.

### D. The Court granted Plaintiff's motion for preliminary injunction and the 2023 Pride Parade proceeded.

On May 18, 2023, the Court enjoined the City from enforcing the key disputed provisions of the 2023 Ordinance "when approving, denying, adjusting, revoking, or imposing costs or charges" related to any application by Aurora Pride. Dkt. 66 at 2. Those provisions were problematic because "the existence, scope or cost of an event" depended on "off-duty officers voluntarily signing up for overtime," which in turn could depend on the content of the event's political or social message. *Id.*; Dkt. 65 at 6–7, 32–35 (heckler's veto), 36–40 (costs). The Court also enjoined the broad language of the indemnity provision of the 2023 Ordinance, which had required applicants like Aurora Pride to hold the City harmless for conduct they did not cause.

4

Dkt. 66 at 2; Dkt. 65 at 43–46. The 2023 Aurora Pride Parade went forward with full police staffing.

### E. Defendants amended the Special Events Ordinance.

The parties mediated their dispute with the assistance of Magistrate Judge Kim. Dkt. 71. After months of discussions, on February 13, 2024, the City substantially modified its special events ordinance (the "2024 Ordinance"). Dkt. 90 at 1–2. The 2024 Ordinance removes the provisions that were the subject of the injunction and revises other provisions Plaintiff identified as problematic. The amendment thus mooted Aurora Pride's claim for injunctive relief, and Aurora Pride does not intend to challenge the constitutionality of the 2024 Ordinance.

## III. DISCUSSION

### A. Aurora Pride is the prevailing party on its claims for injunctive relief.

The Court may grant the prevailing party reasonable attorneys' fees in an action under 42 U.S.C. § 1983. A prevailing party is one who wins a "judicially sanctioned change in the legal relationship of the parties," such as an order binding the defendant's conduct toward the plaintiff. *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 656 (7th Cir. 2007). A plaintiff is a prevailing party if it wins "on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Securing a preliminary injunction is a classic example of a victory that may entitle a plaintiff to fees. *Young v. City of Chicago*, 202 F.3d 1000, 1000–01 (7th Cir. 2000); *Tay v. Dennison*, 2020 WL 6270954, at *2 (S.D. Ill. Oct. 26, 2020); *see also Watson v. County of Riverside*, 300 F.3d 1092, 1095–96 (9th Cir. 2002) ("A preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary" to make a party eligible for fees); *Stinnie v. Holcomb*, 77 F.4th 200, 209

5

(4th Cir. 2023) (noting every circuit that has addressed this issue has concluded that a plaintiff whose injunction is later mooted may qualify as a prevailing party), *petition for cert. filed*, December 8, 2023.

Aurora Pride is the prevailing party because it has obtained "substantive relief that is not defeasible by further proceedings." *Dupuy v. Samuels*, 423 F.3d 714, 719 (S.D. Ill. 2005) (quoting *Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir. 1990)). First, by enjoining the unconstitutional application of the 2023 Ordinance, the preliminary injunction allowed the Aurora Pride Parade to proceed without a reduction in scope or size. Dkt. 66. *Supra* § II.D. This is a "judicially sanctioned change" in the relationship between Aurora Pride and Defendants because the Defendants—who refused to change the challenged language before and after filing of the lawsuit, and opposed the preliminary injunction—intended to enforce the unconstitutional provisions of the ordinance until an order stopped them. *See Gautreaux*, 491 F.3d at 656; *see* Dkt. 65 at 30–31 (noting City's alternatives depending on the number of police officers who choose to volunteer).

Second, the City's 2024 amendment of the Special Events Ordinance to eliminate unconstitutional provisions ensured that there will be no "further proceedings" with respect to Count I of the complaint. And no further proceedings can undo the Court's earlier finding of likely unconstitutionality, since the offending ordinance is no longer in effect.

The Seventh Circuit has held that the party obtaining a preliminary injunction is entitled to fees in this situation. In *Young v. City of Chicago*, the court upheld a fee award where the plaintiff secured a preliminary injunction preventing the City of Chicago from applying an ordinance to exclude protesters from the 1996 Democratic National Convention. 202 F.3d at

6

1000–01. The injunction was mooted after the convention proceeded with the injunction in place, just as this Court's injunction was mooted (via the City's amendment) after the 2023 Aurora Pride Parade took place. The defendants in *Young* argued that movant was not a prevailing party because the suit "became moot before a definitive determination of its merits by th[e] court." *Id.* Rejecting this argument, the Seventh Circuity held that "a defendant cannot defeat a plaintiff's right to attorney's fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter the plaintiff's status as a prevailing party." *Id.* The same is true here. *See also Consolidated Paving, Inc. v. County of Peoria, Ill.*, 2013 WL 916212, at *4–5 (C.D. Ill. Mar. 8, 2013) (granting fees where defendant mooted preliminary injunction by amending problematic provisions of the challenged ordinance); *Tay v. Dennison*, 2020 WL 6270954 (S.D. Ill. Oct. 26, 2020).

### B. Plaintiff's attorneys' fees are reasonable.

Aurora Pride's victory on its preliminary injunction motion would not have been possible without the expertise and diligence of its counsel at the ACLU and Sidley. The attached declarations provide itemized statements of the time and labor expended on this case up until the issuance of the preliminary injunction. *See* Exs. A (ACLU declaration); D (Sidley declaration); *see also* Ex. C (Cygal declaration). The declarants have reviewed the time records at issue and have represented that the hours spent are both conservative and justified in light of the nature of the case. *See* Exs. A ¶¶ 10–11; D ¶¶ 4, 7. Plaintiff's counsel at the ACLU incurred 653.9 attorney hours totaling fees in the amount of $457,730.00 at the rate of $700 per hour. *See* Ex. A ¶¶ 12–13; *see also* Ex. B. Plaintiff's counsel at Sidley incurred 249.20 attorney hours totaling fees in the amount of $245,376.50 at Sidley's standard hourly rates, and out-of-pocket costs totaling

$12,880.15. Ex. D ¶¶ 5–6; *see also* Exs. E–F. Sidley's standard hourly rates range from $630 per hour to $1,450 per hour, and are the rates regularly charged to paying clients. Ex. D ¶¶ 3–4; Ex. E. As the ABA encourages, Sidley has pledged to donate any fee award to an entity that provides services without charge to persons of limited means, in this case the ACLU. *See* ABA Model R. 6.1 Cmt. 4.

The product of the hours reasonably expended on the case multiplied by a reasonable hourly rate, or the "lodestar," is "a presumptively reasonable fee." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). Based on the lodestar method of computing fees, Aurora Pride is entitled to an award of $703,106.50 in attorneys' fees, and $12,880.15 in costs. Exs. B; E–F.

### 1. Plaintiff's requested fees are reasonable because it secured a significant victory on novel legal issues under tight time constraints.

The lodestar calculation described above may be increased or decreased based on factors not already part of the lodestar computation, often called an "upward" or "downward" adjustment. *Montanez,* 755 F.3d at 554; *Hensley*, 461 U.S. at 430 n. 3 (twelve factors)[1] & 434 n. 9 (cautioning many of these factors are often subsumed within the lodestar calculation). The Seventh Circuit has similarly noted that district courts have "flexibility" to adjust awards based on factors such as "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th

---

[1] The factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Cir. 2010). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (quoting *Connolly v. Nat'l School Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). Aurora Pride does not seek any upward adjustment. However, these factors confirm that the amount of fees requested here is reasonable.

*The preliminary injunction motion involved novel and difficult First Amendment questions and limited time to resolve them.* First Amendment law is a complex field, the issues at stake in the preliminary injunction motion were particularly novel, and Plaintiff was required to contend with these issues in a tight time frame so that its motion could be resolved before the 2023 Aurora Pride Parade. *Hensley*, 461 U.S. at 430 n.3 (noting "novelty and difficulty of the questions" and "time limitations imposed" as relevant factors). As far as Aurora Pride's counsel could find, this is the first and only case dealing with a challenge to an ordinance that conditions the size or scope of special events on the voluntary support of City employees. The issues were further complicated by Defendants' factual claims about the City's staffing, their officers' motivations for not volunteering, and the claimed impact of a Collective Bargaining Agreement between the City and non-parties. *See* Dkt. 57 at 4 n.1 & 5 (Plaintiff's responses to these factual arguments in post-hearing briefing).

*Litigation of the preliminary injunction motion was time- and labor-intensive despite Plaintiff's efforts to reduce costs.* Several obstacles outside Aurora Pride's control resulted in this case requiring particularly significant time and labor. First, Aurora Pride attempted to resolve the unconstitutionality of the ordinance during pre-litigation discussions after the 2022 Aurora Pride Parade. *See supra* § II.A. The City refused to remove the "volunteer officer" provisions that put the 2022 Aurora Pride Parade at risk, and instead enacted the 2023

9

Ordinance, which amplified those provisions. *Supra* § II.B. Among other changes requiring fresh legal analysis, the 2023 Ordinance added procedures for altering special events when too few police officers volunteered and a new "Tier 6" default category. *See* Dkt. 34 at 15–18.

Defendants also insisted, over Plaintiff's objection, on discovery and a live evidentiary hearing. *See supra* § II.C. This turned what Plaintiffs had hoped would be a relatively expedited process into weeks of discovery and a mini-trial. *Hensley*, 461 U.S. at 430 n.3 (noting "time and labor required" as a relevant factor). In less than four months' time, the parties prepared for the evidentiary hearing, propounding and responding to written discovery, taking five depositions, conducting a near full-day evidentiary hearing with multiple witnesses, and submitting extensive pre- and post-hearing briefing. *See supra* § II.C.

***Plaintiff secured excellent results.*** Aurora Pride's victory on its injunctive relief claims was near total. *Gastineau*, 592 F.3d at 748 (degree of success obtained is a relevant factor); *Hensley*, 461 U.S. at 436 ("[T]he most critical factor is the degree of success obtained). Aurora Pride secured an injunction prohibiting enforcement of the provisions of the 2023 Ordinance that would have permitted a "heckler's veto" or a controversy surcharge in time for the 2023 Aurora Pride Parade to proceed under its protections. The 2023 Aurora Pride Parade was a resounding success, with no risk of being downgraded to a stationary festival based on anyone's disagreement with Aurora Pride's speech. Aurora Pride subsequently negotiated amendments to mitigate those risks for future events in Aurora. *See* Dkt. 88–1 (2024 Ordinance). In short, Aurora Pride achieved everything it sought through its injunctive claim. Aurora Pride "has obtained excellent results" by any measure, and its attorneys "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.

10

2.  **Plaintiff's attorneys' hourly rates reflect the market rates for their services.**

A reasonable hourly rate is the market rate for the attorney's services. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). The Seventh Circuit "presume[s] that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.*; *see also Simon*, 755 F.3d at 553 (noting the "best evidence" of the attorney's rate "is the amount the attorney . . . bills for similar work"). "[I]f that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Simon*, 755 F.3d at 553; *accord Pickett*, 664 F.3d at 640.

Plaintiffs' counsel at the ACLU seek rates similar to other experienced attorneys handling civil rights cases, because they do not charge their clients hourly rates. Ex. A ¶ 2, 9. Rebecca M. Glenberg has been practicing law since 1997, and Kevin M. Fee since 2002. *Id.* ¶¶ 3, 8. Ms. Glenberg's practice has been entirely in civil rights and liberties since she began practicing, and she has successfully litigated numerous First Amendment cases; Mr. Fee similarly has significant civil rights litigation experience both at the ACLU and as a partner at Sidley, where he had an active pro bono practice and served as the Chair of the firm's Chicago office Pro Bono Committee. *Id.* ¶¶ 3–6, 8. Their requested rates are hundreds of dollars less than what Mr. Fee used to charge paying clients for his services at Sidley. *Id.* ¶ 13; *see also* Ex. C ¶ 8 (declaration of E. Cygal, noting the ACLU's rates are "reasonable, and if anything, low"). Their requested rates are similar to rates charged by similarly experienced attorneys handling similar cases, adjusted for inflation. Ex. C ¶ 2–8; *see, e.g., McKinney v. Chicago Transit Auth.,* No. 20 C 6093, 2023 WL 5153753, at *1 (N.D. Ill. Aug. 10, 2023) (awarding experienced civil rights attorney

11

$650 per hour); *Gautreaux v. Chicago Housing Auth.,* No. 66-cv-01459 (N.D. Ill. Nov. 29, 2023)
(Order Granting Joint Motion for Attorney's Fees) (awarding $625 and $600 per hour for
experienced civil rights attorneys); *Dennison v. Jefferys,* No. 13-cv-00501-NJR, 2020 WL
8258317 (S.D. Ill. Aug. 13, 2020) (Petition for Interim Attorney's Fees) (nonprofit director's
market rate was $750 per hour and co-counsel's rate was $495 per hour); *Autism Homes All.,
LLC v. 6146-48 N. Oakley Condo. Ass'n*, No. 16-CV-5970, 2018 WL 3630012, at *2 (N.D. Ill.
July 31, 2018) (awarding $695 and $550 per hour for civil rights and housing law attorneys);
*Grayer v. Cerda*, 2014 WL 6713480, at *13 (N.D. Ill. Oct. 6, 2014) (report and recommendation
to award civil rights attorneys, a 1993 graduate and a 1973 graduate, $425 per hour and $450 per
hour, respectively, in a civil rights case), *adopted in relevant part*, 2014 WL 6705783, at *2
(N.D. Ill. Nov. 21, 2014).

Plaintiff's counsel at Sidley Austin LLP seek their standard hourly rate routinely charged
to paying clients in the year when the work was done. Ex. D ¶¶ 2–3 (noting these rates would be
charged to Aurora Pride, absent special arrangements, if it were not a pro bono client); *Mathur v.
Bd. of Trustees of Southern Ill. Univ.*, 317 F.3d 738, at 743–44 (7th Cir. 2003) (reiterating rule
that attorney's actual billing rate for comparable work is presumptively appropriate, and "[o]nly
if an attorney is unable to provide evidence of her actual billing rates should a district court look
to other evidence"). This actual billing rate is presumptively appropriate, and courts have
awarded fees based on actual billing rates of firms like Sidley in calculating lodestar awards. *See
Norton v. City of Springfield*, 2017 WL 6402631, at *3, *6, *8–9 (C.D. Ill. Dec. 14, 2017) (using
hourly rate for Latham & Watkins attorneys ranging up to $1,075 for lodestar, but enacting a
20% reduction to fees for attorneys based outside of Springfield or central Illinois because of the

12

"likelihood—uncertain though it is—that a local civil rights attorney would have taken the case and achieved a favorable result"); *Nat'l Rifle Ass'n v. Village of Oak Park*, 871 F. Supp. 2d 781, 788 (N.D. Ill. 2012) (awarding Goodwin Procter attorneys their rates of up to $1,020 an hour).

Plaintiff's counsel have reviewed and reduced their time entries significantly, following the guidance of the Supreme Court. *Hensley*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . ."). The ACLU, for example, removed all time entries for a staff attorney who participated throughout the litigation of the Preliminary Injunction motion, as well as all paralegal time. Ex. A ¶ 7. Sidley has similarly removed all paralegal time as well as all time prior to December 2022. Ex. D ¶ 4. In an abundance of caution, counsel for Aurora Pride have reduced their entries significantly in an effort to seek fees only for work that was essential to obtaining the preliminary injunction. Ex. A ¶ 10–11; Ex. D ¶ 4.

## IV. CONCLUSION

For the foregoing reasons, Aurora Pride respectfully requests the Court grant its petition for attorneys' fees and costs under 42 U.S.C. § 1988.

13

Dated: April 17, 2024                    Respectfully submitted,

                                         AURORA PRIDE

                                         /s/  *Kevin M. Fee*
                                         Rebecca K. Glenberg
                                         rglenberg@aclu-il.org
                                         Kevin M. Fee, Jr.
                                         kfee@aclu-il.org
                                         ROGER BALDWIN FOUNDATION OF ACLU, INC.
                                         150 N. Michigan, Suite 600
                                         Chicago, IL 60601
                                         Phone: (312) 201-9740
                                         Fax: (312) 201-9760

                                         Eric S. Mattson
                                         emattson@sidley.com
                                         Sudeep S. Dhanoa
                                         sdhanoa@sidley.com
                                         SIDLEY AUSTIN LLP
                                         One South Dearborn Street
                                         Chicago, IL 60603
                                         Phone: (312) 853-7000
                                         Fax: (312) 853-7036